# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-01232-COA

**STATE OF MISSISSIPPI**                                               **APPELLANT**

**v.**

**JAMERIO HUDSON**                                                       **APPELLEE**

DATE OF JUDGMENT:           10/12/2021
TRIAL JUDGE:                HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:  HINDS COUNTY CIRCUIT COURT,
                            FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:     OFFICE OF THE DISTRICT ATTORNEY
                            BY: DAVID FITZGERALD LINZEY
ATTORNEY FOR APPELLEE:      OFFICE OF STATE PUBLIC DEFENDER
                            BY: GEORGE T. HOLMES
DISTRICT ATTORNEY:          JODY EDWARD OWENS II
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                APPEAL DISMISSED - 12/06/2022
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     A grand jury indicted Jamerio Hudson for burglary of a dwelling.  The circuit court entered a directed verdict acquitting Hudson of the charge.  The State filed a motion for reconsideration, and the circuit court denied the motion.

¶2.     The State appeals and argues the circuit court erred by (1) granting Hudson's motion for directed verdict and (2) denying the State's motion for reconsideration. Mississippi Code Annotated section 99-35-103(b) (Rev. 2020), in part, only authorizes the State's appeal from a judgment of acquittal "where a question of law has been decided adversely to the state . . . ." The State argues this appeal presents this Court with a pure question of law.  We

disagree and dismiss the appeal.

## FACTS

¶3.     On December 16, 2013, Jackson Police Department received a report of a suspicious vehicle near Adele Court, and Officer Andre Martin was dispatched to the scene.

¶4.     The suspicious vehicle refused to stop, and Jackson Police Department officers pursued the vehicle until the occupants lost control of the vehicle and fled in different directions on foot.  Officer Martin chased and arrested Hudson.  The vehicle contained personal items that did not belong to the occupants.  One of which was a camera bag with Tomica Stowers's name and phone number on it.

¶5.     The police called Stowers.  She left work and met the police at her home.  That was when Stowers discovered that her house had been burglarized.  Stowers later testified that she received the call from the police around 11:30 a.m. and that she had left for work around "8 something."  Stowers identified the camera bag as belonging to her and that it was in the house when she left for work.

¶6.     On April 24, 2014, a grand jury indicted Hudson for burglary of a dwelling.  Miss. Code Ann. § 97-17-23 (Supp. 2008).  On October 1, 2021, the parties proceeded to trial in the Circuit Court of Hinds County, Mississippi.  The State called five witnesses.

¶7.     The State's first witness was Stowers, who testified that she received a call at work about her home being burglarized (*see supra* ¶5), and when she arrived home, she found her house "destroyed . . .[and] tore all up."  She described her home as being "rammed through."  She explained that her bathroom and bedroom drawers were "tore up" and "perfume, nail

2

polish, and stuff were all over the floor" and her closet door was hanging off. Stowers also testified that the following items were missing: collecting coins, multiple pairs of Jordan tennis shoes, a laptop and monogrammed laptop bag, and a camera. She said she "never gave anybody permission to go in my home." She also stated that she did not know Hudson or see Hudson or anybody resembling him near her house when she left for work.

¶8.     Stowers also confirmed that her neighbors attempted to reach her by cell phone, but she did not notice the missed calls because she was working and did not return the calls. Therefore, she did not know if her neighbors saw Hudson or anyone resembling Hudson near her house.

¶9.     Next, Officer Andre Martin testified that he was dispatched to investigate a suspicious vehicle near Adele Court around 10:00 a.m., and upon arriving to the area, he observed a two-door Honda Accord with no license plate. Officer Martin activated his blue lights, but the vehicle sped off "driving erratically, south, on Medgar Evers Blvd, off the side of the road, running red lights." He testified he was approximately a half block from Stowers's neighborhood when he came in contact with the vehicle. Officer Martin also radioed dispatch with a vehicle description, and Officer Kevin Nash responded.

¶10.    Officer Martin explained that the suspects lost control of the vehicle, and both occupants jumped out of the vehicle and ran in different directions. Officer Martin testified that he chased Hudson into the apartment complex. He said that "another officer was [at the other end of the complex . . . and once Hudson] saw the other officer," he stopped. Officer

Martin apprehended Hudson and recovered a wallet and marijuana from the pat-down.[1]  In addition, Officer Martin stated that he observed "two pairs of Jordans, Dell laptop, a camcorder, a jar of US currency coins, [and] video camera" in the trunk of the vehicle.[2]

¶11.    Next, Officer Kevin Nash testified that he was on patrol when Officer Martin was dispatched to a suspicious vehicle around 9:04 a.m.  He also stated that he was en route to provide backup when Officer Martin radioed the description of the suspicious vehicle, a white Honda Accord with no license plate, and the highway chase began.  Officer Nash also explained that he was able to "catch up [at Sunset Drive] . . . because [Officer Martin] pretty much called out every street that they were passing and crossing."  He clarified that he only pursued the driver of the vehicle and was not involved in the chase and arrest of Hudson.[3]

¶12.    Officer Nash also testified that he conducted a vehicle inventory search and found a valid license plate in the trunk of the vehicle.  He said he discovered the following items either in the trunk or on the backseat of the vehicle: a jar of coins, Dell laptop, ten to twelve

---

[1] Juantez McDonald was identified as the driver of the Honda Accord whom Officer Nash apprehended.

[2] On direct examination, Officer Martin was also asked if the apprehended subjects claimed any of the items discovered in the vehicle.  Officer Martin answered that Hudson or "someone" (one of the apprehended subjects) said the items belonged to his sister; however, during cross-examination, Officer Martin referred to the "someone" as Juantez McDonald, the driver of the vehicle.  Officer Martin also failed to include McDonald's personal statement in his report.  When asked why Officer Martin failed to include McDonald's statement, he replied, "[I]t may not have been recalled at the time."

[3] Officer Nash also described the driver's behavior during the chase and detain.  He stated that he gave a verbal warning to which the driver responded, "[F] y'all.  Y'all punk, mf'ing police."  Officer Nash also explained that the driver was detained while attempting to climb the fence and kept "jerking and snatching away" as the officers walked him back to his patrol car.

4

pairs of Air Jordan, and an Olympus camera in an Olympus camera bag with the name, "Tomica Stowers" on it.[4] Lastly, he stated that he released Stowers's personal property back to her but did not collect any fingerprints.[5]

¶13.   Detective Corey Jenkins testified that he was the primary detective during the burglary investigation, but did not go to Stowers's home and did not investigate the burglary that occurred at her home.  He explained that the primary officer, Rhonda Daniels, went to Stowers's home and wrote the original report.  Detective Jenkins stated he gave *Miranda*[6] rights to Hudson and McDonald, and both refused to give personal statements.

¶14.   The State's last witness was Officer Rhonda Daniels, who served as the lead detective during the burglary investigation.  Officer Daniels was on the scene with Officers Martin and Nash during the vehicle inventory search.  She testified that she obtained a phone number from the recovered camera bag and called the owner and explained that officers had located a camera and bag with her name on it.  Detective Daniels explained that around 12:07 p.m., Stowers returned the phone call, and told Officer Daniels that the camera belonged to her.

¶15.   Detective Daniels also testified that she met Stowers at her burglarized house around

---

[4] A blue phone was also found in the vehicle, but it did not belong to Stowers.

[5] During cross-examination, Officer Nash could not confirm Hudson's presence at the time of the burglary.  He stated that he was not certain when Hudson entered McDonald's vehicle.  Officer Nash also testified that Hudson claimed some of the personal items in the vehicle when Hudson asked, "[W]hat are you going to do with my stuff?"  The court ultimately found Officer Nash's statement an assumption because Officer Nash did not clarify Hudson's statement.  When Hudson was detained, a wallet and marijuana was found on him, and a blue cell phone, which did not belong to Stowers, was found in the vehicle.

[6] *Miranda v. Arizona*, 384 U.S. 436, 439 (1966).

12:21 p.m., and "the whole house was ransacked, like tumbled through . . . everything was gone through. . . [t]ossed everywhere," and the door was kicked in off the hinge. She also stated that she attempted to collect fingerprints but was not able to retrieve any.[7]

¶16. After the State rested, Hudson moved for a directed verdict. He argued that the State did not present any evidence that placed Hudson at Stowers's house. The defense stated that the State failed to show any "physical evidence, . . . direct evidence, [or] direct testimony . . . show[ing] that Hudson entered" Stowers's house or "broke and entered" her house. The testimony only showed that Hudson was a passenger in the vehicle on December 16, 2013. On October 12, 2021, the Hinds County Circuit Court granted Hudson's ore tenus motion for a directed verdict, acquitting Hudson of the charge of burglary of a dwelling on the ground that the State presented legally insufficient evidence to sustain a conviction. The State moved for reconsideration, but the circuit court denied the motion because "the caselaw cannot be refuted."

## STANDARD OF REVIEW

¶17. We review a trial court's grant of a motion for a directed verdict de novo. *Abrams v. Boggs*, 914 So. 2d 738, 740 (¶7) (Miss. Ct. App. 2005); *Munford Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992). However, we must first address our appellate jurisdiction and determine whether the State may appeal from the directed verdict acquitting Hudson of burglary of a dwelling.

## ANALYSIS

---

[7] Stowers collected her personal property at the police headquarters. She did not claim the blue phone.

6

¶18.   On appeal, the State (Appellant) argues the circuit court erred in granting Hudson's motion for directed verdict.  The State argues that this appeal is authorized by Miss. Code Ann. section 99-35-103(b).  The State maintains that section 99-35-103(b) authorizes the State to appeal an adverse verdict when, as here, the decision appealed is a question of law. In response, Hudson (Appellee) argues section 99-35-103(b) does not authorize the appeal because "no question of law was decided adversely to the state;" therefore, the appeal should be dismissed.

¶19.   Section 99-35-103(b) authorizes the State to appeal

> **[f]rom a judgment actually acquitting the defendant where a question of law has been decided adversely to the state or municipality**; but in such case the appeal shall not subject the defendant to further prosecution, nor shall the judgment of acquittal be reversed, but the Supreme Court shall nevertheless decide the **question of law presented**.

(Emphasis added).  The appellate courts of Mississippi have continuously held that section 99-35-103(b) requires the State's issue on appeal to be a pure question of law and unmixed with decisions of facts.

¶20.   In *State v. Insley*, 606 So. 2d 600 (Miss. 1992), the Mississippi Supreme Court explained "the [State] is allowed to take an appeal only to the extent that a statute confers the right . . . [, and] [t]he statutes are generally divided into two basic groups: **(a) appeals permitted to determine a question of law**; and (b) appeals permitted so long as the traditional concept of double jeopardy is not violated." *Id.* at 602 (emphasis added).  In *Insley*, the State argued that "[the supreme court] may and should determine that the trial court erred in granting the J.N.O.V. and should reinstate the jury verdict." *Id.*  The supreme

7

court disagreed and held that the State did not present a mere question of law; therefore, the State was "without authority to prosecute the appeal. " *Id.* at 604. The supreme court emphasized, "[W]e have repeatedly held that Miss. Code Ann. § 99-35-103, along with the Code's source, does not authorize the state to appeal from a judgment discharging a defendant on the ground that the proof was insufficient to sustain conviction." *Id.* at 602.

¶21. In *City of Pascagoula v. Delmas*, 157 Miss. 619, 128 So. 743 (1930), the Mississippi Supreme Court held that an appeal from a judgment of acquittal is allowed only when the question of law is distinct and unmixed with "questions of facts." *Id.* at 743-44. The City filed an appeal after the trial court acquitted the appellee of an ordinance violation that charged a person who "'knowingly, wilfully or negligently permit or cause' any . . . animal . . . to run at large within the municipal boundaries." *Id.* At trial, the City was unable to prove that the appellee's animal was ever within the city's boundaries, and the court found that such evidence was an essential element necessary for conviction. *Id.* The Mississippi Supreme Court denied the City's appeal because the lower court's ruling was "based upon, or at least . . . inextricably mixed with, questions of fact." *Id.* at 744.

¶22. This Court addressed the same issue in *Kemper County v. Parks*, 281 So. 3d 208 (Miss. Ct. App. 2019). In *Kemper County*, the State asked the Court for "[a] ruling and clarification of a question of law, namely, a clear, objective standard in applying a former [Rule]." *Id.* at 210 (¶15). We explained that section 99-35-103(b) did not permit review because the appeal was not about a pure "question of law." *Id.* at (¶6). Instead, the appeal presented the Court with "an interpretation of the facts as to whether or not the [appellee]

8

initially followed the rule governing his appeal and what the [appellee's] intention may have been." *Id.* This Court concluded that "relief was outside our realm for consideration because we were not presented with a question of law **only**." *Id.* (emphasis added). *Kemper County* reiterated the supreme court's holding in *City of Pascagoula*, that questions of fact mixed with questions of law are not subject to appeal in this context.

¶23.   In *State v. Ashley*, 194 Miss. 110, 11 So. 2d 832 (1943), the Mississippi Supreme Court addressed the right of the state to appeal in criminal cases under the then-governing statute, section 19 of Hemmingway's Code of 1930.[8] The supreme court briefly but plainly stated its reason for granting the appellee's motion to dismiss the appeal:

> "An appeal does not lie on behalf of the State . . . from a judgment of acquittal based upon a directed verdict in favor of a defendant . . . where [the directed verdict] is granted because of the insufficiency of the evidence to sustain the charge made in the . . . indictment, **even though the question involved on the ruling of the trial court may be a mixed one of law and fact**."

*Id*. at 832 (emphasis added).

¶24.   *Ashley* echoes the precedent and principal established in *State v. Brooks* 102 Miss. 661, 59 So. 860, 860 (1912), where the supreme court denied the state's appeal of a directed verdict granted for insufficiency of evidence to sustain the appellee's conviction. The supreme court distinguished a question of law from a mixed question of law and fact and concluded that the code only authorized appeal of distinct questions of law. *Id.* Although

---

[8] The supreme court stated, "[A]n appeal does not lie on behalf of the State or a municipality under section 19, Code of 1930, from a judgment of acquittal based upon a directed verdict . . . to sustain the charge . . . or indictment, even though the question involved on the ruling of the trial court may be a mixed one of law and fact." *Ashley*, 11 So. 2d at 832.

*Ashley* and *Brooks* were written before Mississippi Code Annotated section 99-35-103 (1972), the supreme court has held tightly to the underlying precedent and principal: The state may only appeal from a judgment of acquittal when the issues present a pure question of law.

¶25.    Here, the circuit court granted Hudson's motion for directed verdict because the State failed to present sufficient factual evidence to sustain a burglary of a dwelling conviction. The circuit court heavily relied on the unique facts presented to reach its ruling.  Section 99-35-103(b) does not authorize an appeal by the State when the "question involved on the ruling of the trial court may be a mixed one of law and fact." *Ashley*, 11 So. 2d at 832.  Upon review of the record, we find the State's appeal presents this Court with a mixed question of law and fact.

## CONCLUSION

¶26.    After review of the record, this Court finds Mississippi Code Annotated section 99-35-103(b) does not authorize the State's appeal because the issues do not present this Court with a pure question of law.  Therefore, we dismiss the appeal.

¶27.    **APPEAL DISMISSED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**